UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | **DECISION AND ORDER** |
| v. | 19-CR-00125-RJA-JJM-001 |
| JOHN SANDERS, Jr., <br>                Defendant. | |

Familiarity with the prior proceedings is presumed. By Order dated August 26, 2019 [93], District Judge Richard J. Arcara vacated my June 21, 2019 oral release order and remanded this action to me to determine whether defendant John Sanders, Jr. should be detained or released upon conditions. Thereafter, Sanders was named in a Superseding Indictment adding one count against him ([123], Count 40), and the government renewed its motion for detention. At the conclusion of the detention hearing on September 17, 2019, I ordered Sanders released on various conditions, and stated that a written decision would follow. This Decision and Order explains my reasons for that ruling.

## DISCUSSION

"Under the Bail Reform Act, a court is required to order the pretrial release of a defendant on personal recognizance or after execution of an appearance bond 'unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" United States v. Boustani, 932 F.3d 79, 81 (2d Cir. 2019). Since Sanders is charged with an offense for which a maximum term of imprisonment of 10 years or more is prescribed by the Controlled Substances

Act, a rebuttable presumption arises that no conditions of release will reasonably assure against flight or dangerousness. 18 U.S.C. § 3142(e)(3).

"Such a presumption places a limited burden of production - not a burden of persuasion on the defendant to come forward with evidence that he does not pose a danger to the community or a risk of flight. Such production does not eliminate the presumption favoring detention. Rather, it remains a factor to be considered among those weighed by the district court, with the government bearing the ultimate burden of making a preponderance showing that the defendant poses a risk of flight and a clear and convincing showing that he presents a danger to persons or the community." United States v. Khusanov, 731 Fed. App'x 19, 21 (2d Cir. 2018) (Summary Order); United States v. Pirk, 220 F. Supp. 3d 402, 405 (W.D.N.Y. 2016) ("at all times the Government retains the ultimate burden of persuasion").

"In determining whether any condition or combination of conditions is sufficient, a court should consider several factors, including: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendant's release." Boustani, 932 F.3d at 81, *citing* 42 U.S.C. §3142(g). "Determining the weight to be accorded to each factor in reaching the ultimate finding as to the existence of conditions is the special province of the trier of fact", United States v. Shakur, 817 F.2d 189, 196 (2d Cir.1987), "bear[ing] in mind that it is only a limited group of offenders who should be denied bail pending trial". Id. at 195.

In light of those considerations, I will apply each of the § 3142(g) factors:

A.  **The Nature and Circumstances of the Charged Offense and Weight of the Evidence**

Sanders and nine co-defendants were originally charged in a 34-count Indictment [3] with a variety of narcotics-related offenses. The seven counts against Sanders included conspiracy to possess with intent to distribute, and to distribute, 28 grams or more of cocaine base and marijuana, in violation 21 U.S.C. §846 (count 1); maintaining a drug-involved premises, in violation of 21 U.S.C §856(a)(1) and 18 U.S.C. §2 (counts 2 and 3); possession with intent to distribute and distribution of 28 grams or more of cocaine base and marijuana, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B) and 841(b)(1)(D), and 18 U.S.C. §2 (count 4); and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(D), and 18 U.S.C. §2 (counts 5, 6, and 13).

While the newly added charge of the Superseding Indictment [123] concerns an additional count of possession of marijuana with intent to distribute (count 40), it does not differ in substance from the counts of the original indictment, nor is it a crime that triggers the rebuttable presumption of 18 U.S.C. §3142(e)(3). Other than that, little has changed from when I initially determined that Sanders was suitable for release on conditions - in fact, some of the additional information that was submitted to Judge Arcara further weighs against detention. For example, although the government describes Sanders as one of the two leaders of the drug conspiracy, Judge Arcara noted that the government's "evidence of the defendant's leadership role in the drug-trafficking conspiracy is limited". Order [93], p. 3. He also noted that Sanders' underlying conduct with respect to Count 4, charging him with possessing 28 grams or more of a mixture containing cocaine base with intent to distribute, "is not as strong as the United States proffered". Id., p. 4.

In addition to the weaknesses noted by Judge Arcara, of the 27 controlled buys of

crack cocaine conducted by the DEA, none of the purchases were made from Sanders, and he was only present for two of the transactions. Government's Memorandum of Law [36], p. 11. Also, the search warrant executed on Sanders' vehicle and the search incident to his January 2019 arrest by the Tonawanda Police recovered marijuana and cash, but not cocaine or crack cocaine. Id.

B.  Sanders' History and Characteristics

This factor requires the court to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings". 18 U.S.C. §3142(g)(3)(A).

While Sanders' criminal history is lengthy, involving approximately 24 arrests since 2010, Judge Arcara recognized that "most of defendant Sander[s'] arrests are for marijuana-related misdemeanors, and he has no history of violent crime or firearms possession". Order [93], p. 3. Moreover, "[t]he Bail Reform Act, by its nature, is always looking forward. To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward." United States v. Barner, 743 F. Supp. 2d 225, 228 (W.D.N.Y. 2010); United States v. Madoff, 586 F. Supp. 2d 240, 250 (S.D.N.Y. 2009).

Sanders has strong ties to the community, having been born and resided here for the last eight years, following the competition of three years of military service. June 19, 2019 Pretrial Services Report p. 1. His family is also here. He has seven siblings who reside locally, and he maintains a positive relationship with most of his family members. Id. Sanders is also

the father of four young children (ranging in ages from 11 months to 6 years old) - all of whom reside in Buffalo. Sanders' Memorandum in Opposition [60], p. 9; June 19, 2019 Pretrial Services Report, p. 2. Prior to his arrest, he was employed by Sterling Janitorial, and can return to that job if released. Sanders' Memorandum in Opposition [60], p. 10; June 19, 2019 detention hearing transcript [46], p. 11. The need to be with and support his young children strongly mitigates against him fleeing or otherwise violating the conditions of his release.

C.     **The Nature and Seriousness of the Danger Posed by the Sander's Release**

Although Sanders is not charged with firearms offenses or crimes of violence, "the harm to society caused by narcotics trafficking is encompassed within Congress' definition of danger" under the Bail Reform Act. United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985). Therefore, I must determine whether there are conditions which may be imposed to reasonably assure the safety of the community, bearing in mind that "the facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence".

Sanders' ability to resume his alleged drug trafficking activities is curbed by the stringent conditions of release I have imposed. In addition to the standard conditions of release here and his compliance with any other conditions imposed by the Town of Tonawanda and Buffalo City Courts in connection with his other pending criminal matters, Sanders will be subject to home detention at 248 Cambridge Avenue, upper apartment, with electronic monitoring.[1] These conditions should keep him away from Townsend Street, the location of his

---

[1]     Although I considered placing Sanders on the more restrictive conditions of home incarceration and GPS monitoring, I opted not to so in order to give him an opportunity to continue his employment.

-5-

alleged criminal activities. *See* Order [93], p. 3 (his residence is approximately a 20-minute drive from 67 Townsend Street). As a condition of Sanders' pretrial release, he must also avoid contact with his co-defendants unless approved by Pretrial Services.

The fact that Sanders' brother (Allen Harris), the mothers of his children (Tenaya Richardson and Dyamond Gray), and a close friend (Ebony McCall) have each executed signature bonds in the amount of $20,000 (June 21, 2019 hearing transcript [47], p. 11) furnishes significant additional protection against both danger and the risk of non-appearance. While the government questions their ability to satisfy these bonds if Sanders violates his release conditions (government's Memorandum of Law [36], p. 19), "the Bail Reform Act and Rule 46(e) permit a court to order an unsecured appearance bond as an appropriate condition of release pursuant to 3142(c)(1)(B)(xiv), without requiring the signatories to 'qualify' as 'sureties' under [Fed. R. Crim. P. ('Rule') 46(e)." United States v. Powell, 2010 WL 2557388, *5 (N.D. Cal. 2010).[2]

"Even if it is likely that [the] cosigners do not each have [sufficient] available assets today, each stands to suffer real and long-lasting financial harm if defendant disappears and the government obtains a money judgment against them." Id., *2. I have confirmed that each of these individuals is employed, and that they understand the risk which they are undertaking on Sanders' behalf. *See* June 21, 2019 detention hearing transcript [47], p. 12. I also warned Sanders that "if you violate any of those conditions of release, then not only will you be likely subject to having your release revoked, but you may be subject to additional criminal consequences and, above and beyond that, you will be placing each of these four individuals that

---

[2] Rule 46(e) provides that "[e]very surety, except a legally approved corporate surety, must demonstrate by affidavit that its assets are adequate".

have placed their trust in you, you will be placing them at serious financial risk". Id., p. 15. He assured me that he understood and would not allow that to happen. Id.

"[A] bail bond and its collateral may be forfeited not only for the defendant's failure to appear, but also for other violations of bond conditions, including the defendant's commission of a crime." United States v. Gigante, 85 F.3d 83, 85 (2d Cir. 1996). "[T]he amount of the bond and the selection of its co-signers creates an adequate deterrent for [defendant]. He will not want to cause real and significant financial damage to the co-signers, all of whom are close to him." Powell, *2, n. 2. *See* also United States v. Famiglietti, 548 F.Supp, 2d 398, 409 (S.D. Tex. 2008) (an "important source of internal 'pressure' on a defendant [to comply with release conditions] is the fear that if he breaches, he will impose real harm on the people he cares about"); United States v. Beckett, 2011 WL 1642507, *4 (N.D. Cal. 2011) ("the co-signer was staking her financial future on [defendant's] compliance with the terms of his release. It is the defendant's recognition of that risk . . . that reasonably assures the Court of the defendant's appearance and the safety of the community").

18 U.S.C. §3142(f) provides that "[t]he facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence". Notwithstanding the presumption in favor of detention, the government has failed to present clear and convincing evidence that no such conditions exist.

## CONCLUSION

"[T]he Bail Reform Act requires only reasonable assurance, *not* a guarantee, that the conditions will prevent danger or flight." Barner, 743 F. Supp. 2d at 233 (emphasis in original). The release conditions which I have imposed reasonably assure me that if released, Sanders will pose neither a risk of flight nor a danger to the community. Therefore, absent further order of this court, he will be released from custody on October 15, 2019 at 12:00 p.m. In the interim, Allen Harris shall arrange with my chambers this week to re-affirm his signature bond based on the return of the Superseding Indictment (the other signators have already done so).

**SO ORDERED.**

Dated: October 8, 2019

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge