UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOHN SANDERS, JR.,

Defendant.

**DECISION AND ORDER**
19-CR-125-A

Defendant John Sanders, Jr., is charged in nine counts of a 28-count Second

Superseding Indictment with various narcotics-related offenses, including a narcotics

conspiracy at Count 1.[1]  Dkt. No. 291.  This case was referred to Magistrate Judge

Jeremiah J. McCarthy pursuant to 28 U.S.C. § 636(b)(1) for the conduct of pretrial

proceedings.  Dkt. Nos. 4, 43.

After conducting a suppression hearing, on January 19, 2021, Magistrate Judge

McCarthy filed a Report and Recommendation ("R&R"), Dkt. No. 502, recommending

that the Court grant the motions by Defendant to suppress evidence obtained on August

31, 2018 and November 26, 2018, Dkt. No. 99, pp. 6-7.  The Government filed

objections to those recommendations.  *See* Dkt. No. 517.  Defendant filed his response

---

[1] Count 1 charges a narcotics conspiracy from approximately August 2018 to June 18, 2019; Counts 2 and 3 charge maintaining a drug-involved premises (67 Townsend Street and 76 Townsend Street, respectively), in the same timeframe as Count 1; Counts 4 and 5 charge possession with intent to distribute cocaine base and marijuana, respectively, on August 31, 2018; Count 6 charges possession with intent to distribute marijuana on November 26, 2018; Count 7 charges possession with intent to distribute marijuana on December 5, 2018; Count 14 charges possession with intent to distribute cocaine base and marijuana on January 21, 2019; and Count 28 charges possession with intent to distribute marijuana on June 18, 2019.  The Court issued a Decision and Order on January 11, 2021 adopting the Report and Recommendation that recommended the Court deny Defendant's motions to suppress and for an evidentiary hearing relative to a January 21, 2019 traffic stop of Defendant's vehicle.  Count 14 is specific to that incident and is not pertinent to the instant Decision and Order.

in opposition thereto, Dkt. No. 531, and the Government filed reply papers, Dkt. No. 539.  Oral argument on the Government's objections was held before the Court on April 28, 2021.  *See* CM/ECF Minute Entry, 04/28/2021.  The Court thereafter required further briefing.  *See* Dkt. No. 546.  The parties' supplemental papers were then filed, *see* Dkt. Nos. 549, 550, and oral argument was continued on June 2, 2021, *see* CM/ECF Minute Entry, 06/02/2021.

Upon *de novo* review, and for the additional reasons that follow, the Court ADOPTS Judge McCarthy's R&R.  Defendant's suppression motions are GRANTED, and the Government's objections are OVERRULED and its request to reopen the suppression hearing for a limited purpose is DENIED.

## DISCUSSION

On a dispositive matter, such as motions to suppress, the magistrate judge may only issue an R&R.  *See* 28 U.S.C. § 636(b)(1)(A),(B).  Pursuant to 28 U.S.C. §636(b)(1)(C), the Court applies a *de novo* standard of review to the portions of a report and recommendation to which specific objections have been raised.  When a party does not object to a portion of an R&R, or when a party makes objections that are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009).  A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

The Court assumes the parties' familiarity with the prior proceedings and the issues that are under review.  The facts relevant to Defendant's motions are discussed below only to the extent necessary to explain the Court's analysis.

## I. Physical evidence seized from Defendant's person on August 31, 2018

A. <u>Factual Background</u>

On August 21, 2018, a search warrant was issued by a Buffalo City Court Judge, authorizing a search of the premises described as "67 Townsend Buffalo Ny 14206 in the lower front apt.[ ] It is a 1.3 story 2 family home white in color with white trim." Dkt. No. 463-2 (Gov't Ex. 2 [search warrant]). The search warrant further states that 67 Townsend is "occupied" by an "Unknown B/m 5'-10'' 185-200 lbs in his late 20's to early 30's dark complexion with a beard." Dkt. No. 463-2, p. 2. It authorizes a search of "any person thereat or therein . . . for the following property, to wit: CRACK COCAINE and for any personal papers or documents which tend to identify the owner, leasee or whomever has custody or control over the premises . . . searched or the items seized and seize said property forthwith". The search warrant was to be executed within 10 days of the date it was issued. *See* Dkt. No. 463-2, p. 2.

Ten days later, on August 31, 2018, Officer AB Patterson was part of the search warrant team that searched the premises of 67 Townsend, with his objective "to be in the area so people that are around don't think it's a burglary" and if "there's anybody that['s] running, we stay on the outside perimeter to chase after them". *See* Dkt. 463-4, p. 1 (Gov't Ex. 4A [photograph of the front of 67 Townsend]).

Officer Patterson first testified that in approaching the premises he saw a group of people running from the building, and he chased one person who ran to the right side of 67 Townsend. That individual was wearing a red shirt, and Officer Patterson identified him during the hearing as Defendant. *See* Dkt. 463-4, p. 7 (Gov't Ex. 4G [photograph of Defendant]). When Officer Patterson focused on Defendant, he saw him

run "to the right side of the house", ending up on what appears to be a concrete driveway/ walkway leading to the rear, righthand side of the house, near the backyard. *See* Dkt. 463-4, pp. 1, 3, 4 (Gov't Ex. 4A, 4C, and 4D [photographs of this area, from different perspectives, with Exhibit 4A also depicting the adjacent lot to the right of 67 Townsend]). There, Defendant turned and lowered himself to the ground as if surrendering and Defendant was apprehended on the ground in that location. Approximately 5 to 10 feet from Defendant to the right side of the house (if facing the façade of 67 Townsend from the street) was a crumpled-up tent in a vacant lot, with another house to the right of that vacant lot. *See* Dkt. 463-4, p. 2 (Gov't Ex. 4B [photograph of the deflated tent]).

When specifically asked where Defendant started running from, Officer Patterson later testified, "I want to say he—well, I don't want to make anything up. I just saw him running. And that's when we all got out of our cars. I can't say where it started." He followed this with, "I want to say I saw him running on the right side of the house . . ." Magistrate Judge McCarthy found that Officer Patterson "could not say where Sanders ran from".

Officer Patterson detained and handcuffed Defendant, and then searched him and recovered his wallet, which contained his identification; his cell phone, an "unknown amount of money"; and keys. *See* Dkt. 463-4, p. 9 (Gov't Ex. 4I [photograph of the items recovered from Defendant's person]). He patted Defendant down and handed all the contents of Defendant's pockets over to a detective. Officer Patterson "did not find anything illegal" on Defendant, although he later found marijuana, *i.e.*, "multiple bags" with "cylinders of weed inside" them under the tent in the vacant lot adjacent to 67

Townsend. *See* Dkt. 463-4, p. 2 (Gov't Ex. 4B [photograph of the deflated tent, and empty baggies that did not contain narcotics]); Dkt. No. 466, p. 12 (Hr. Tr.). There was no testimony about the amount of marijuana found under the tent, although the Buffalo Police Report from that date notes there was "over 2 oz." of marijuana and "cut". Dkt. No. 463-1 (Gov't Ex. 1), p. 2.

Detective Raymond Krug was also a part of the search team on August 31, 2018. He testified that he was aware that Townsend Street "had high activity of narcotics dealings" and that marijuana and crack cocaine were being sold at 67 Townsend. He admitted that he had not seen the search warrant prior to the raid and that he was not involved in obtaining the warrant, although he was aware that the search was pursuant to a warrant. Detective Krug also testified that he did not know if the search warrant described Defendant, or if Defendant lived at 67 Townsend or had ever been inside the property. Dkt. No. 466, pp. 52-53.

He saw Defendant in the backyard of the premises. Detective Krug was familiar with Defendant, having observed him at another premises in 2013 or 2014 when Defendant was arrested for possession of narcotics. He testified that Defendant was placed in handcuffs before marijuana was found in the tent adjacent to 67 Townsend and before crack cocaine was found in a vacant garage across the street from 67 Townsend. *See* Dkt. 463-4, p. 6 (Gov't Ex. 4F [photograph of Defendant in handcuffs and seated next to the front porch of 67 Townsend]). When asked whether 67 Townsend was searched, Detective Krug responded in the affirmative; however, he could not remember if anything was found inside the apartment. There was no testimony concerning the length of the search in the lower apartment at 67 Townsend,

or when that search began and ended in relation to Defendant's arrest. Detective Krug collected the money recovered from Defendant and gave it to his supervisor to count. The cash totaled over $1,400.

The Buffalo Police Report from August 31, 2018 reflects that Defendant was charged with New York Penal Law § 221.15 (criminal possession of marijuana in the 4th degree). Dkt. No. 463-1 (Gov't Ex. 1), p. 1.

The Government conceded at the June 2, 2021 continuation of oral argument there is nothing in the record regarding surveillance of 67 Townsend or how long that surveillance had been conducted before August 31, 2018.

B. <u>Initial Analysis</u>

The Government's primary objection is that the search and seizures were conducted pursuant to a validly issued and properly executed New York State search warrant, an argument that the Government admits it did not make "explicitly" below. Nevertheless, it asserts that the R&R "overlooked" this "simple fact" and that the Magistrate Judge misapplied the law relative to *warrantless* searches and seizures.

The Government's reasoning is as follows: (1) Defendant was lawfully detained pursuant to the doctrines in *Michigan v. Summers*, 452 U.S. 692 (1981) and *Bailey v. United States*, 568 U.S. 186 (2013) because he was within the "immediate vicinity" of the search warrant location, 67 Townsend; (2) upon seizing Defendant, the officers could conduct a "limited search" of Defendant as a "self-protective measure"; and (3) "(b)ased on these principles alone, officers acted properly in seizing the defendant's personal belongings." Dkt. No. 517, p. 9.

Judge McCarthy did not address the issue of whether Defendant's initial detention was lawful or whether it was made pursuant to the search warrant. Rather, he focused his analysis on warrantless seizures of items from Defendant and found that there was no probable cause to believe the items seized from Defendant constituted contraband or evidence of a crime. He also reasoned that a seizure cannot be validated as supported by probable cause retroactively, finding that "there was no contraband in Sanders' wallet or on his person at the time of the seizure, and Officer Patterson's subsequent discovery of marijuana under a tent in the vacant field adjacent to 67 Town[s]end (which is any event was never connected to Sanders) cannot retroactively validate the seizure." Dkt. No. 502, pp. 4-8.

"It is well established that the burden of production and persuasion generally rest upon the movant in a suppression hearing." *United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir. 1980). "[O]nce [the defendant] establishes a basis for his motion, the burden rests upon the [g]overnment to prove, by a preponderance of the evidence, the legality of the actions of its officers." *United States v. Battle*, Case No. 5:13-cr-38-cr-1, 2013 WL 5769982, 2013 U.S. Dist. LEXIS 152689, *15 (D. Vt. Oct. 24, 2013) (internal quotation marks and citations omitted). The Government did not meet this burden.

The Court concludes that although there was a valid search warrant, it did not authorize the seizure of the items recovered from Defendant's person. In addition, the Government has not met its burden of proving that the seizures, if warrantless, were legal, in other words, that the seizure was "otherwise justifiable under any of the well-recognized exceptions to the Fourth Amendment's warrant requirement[.]" *United*

*States v. Joyner*, No. 3:17-cr-00236 (JAM), 2019 WL 1760843, 2019 U.S. Dist. LEXIS 67996, *8-9 (D. Conn. Apr. 22, 2019).

      C.  <u>Whether the search warrant authorized the search and seizures at issue</u>

The Fourth Amendment's particularity requirement, which outlaws sweeping, general warrants, requires a sufficiently clear description of both (1) "the place to be searched", and (2) "*the persons or things to be seized*."  U.S. Const. amend. IV (emphasis added).  "The requirement that warrants shall particularly describe the things to be seized . . . prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927); *see also United States v. Clark*, 638 F.3d 89, 102-103 (2d Cir. 2011).  Warrants in narcotics cases have generally been subjected to less exacting standards than other categories of cases.  *See, e.g., United States v. Riley*, 906 F.2d 841, 843 (2d Cir. 1990) (categories of records "and other items that constitute evidence of" drug crimes sufficiently particular); *United States v. Young*, 745 F.2d 733, 758 (2d Cir. 1984) (warrant for narcotics and "notes, documents and papers and other evidence of" narcotics conspiracy not overbroad).

First, the Government posits that Defendant was properly seized because he fits the description of "the target's height, weight, age, complexion, and facial hair".  Defendant admits that the description of 67 Townsend's occupant "matches [his] characteristics in the most general of terms", which the Court concludes is so.  *Compare* Dkt. No. 463-2 (Gov't Ex. 2), p. 2 (description of 67 Townsend's occupant in the warrant) *with* Dkt. No. 463-1, p. 1 (Gov't Ex. 1 [August 31, 2018 Buffalo Police Report]), p. 1 (listing Defendant's characteristics as black male, age 35, 5' 10'' tall, 200 pounds, black hair brown eyes, dark brown complexion); *see also* Dkt. 463-4, p. 7 (Gov't Ex. 4G

[photograph of Defendant]); Dkt. 463-4, p. 9 (Gov't Ex. 4I [photograph showing Defendant's identification card]).  However, as Defendant points out, the description is broad, the search warrant does not name him specifically, and he was not a "target" in the search warrant as the Government describes him—rather, the description of the unknown individual is of an "occupant" of 67 Townsend.  The phrase allowing for the search of "and of the person(s) of" is left blank on the search warrant application.  There is no evidence, as noted by Judge McCarthy, that Defendant "resided at or had ever been inside of 67 Townsend."

Thus, Defendant was not specifically identified in the warrant as a person to be searched or seized.

Second, even though Defendant was not personally identified in the search warrant, the warrant permits the search of "any person thereat or therein" for either crack cocaine or papers or documents identifying any individual with "custody and control over the premises . . . searched or the items seized", and states that such items could be seized.  The parties dispute whether the officers could seize and search Defendant pursuant to the broadly worded "any person thereat or therein" language of the warrant, specifically "thereat", which they agree is the term that applies here.[2]

---

[2] While this State case law is not controlling, it can be instructive.

New York's Criminal Procedure Law § 690.15(2) provides, "A search warrant which directs a search of a designated or described place, premises or vehicle, may also direct a search of any person present thereat or therein" (emphasis added).  A Second Circuit district court decision interpreting this statute states, "Of course, it is well-settled, and has been for a very long time, that this overly-broad directive cannot be read literally, and does not authorize executing officers to search anyone unless the application demonstrates probable cause for the search of that person."  *Campbell v. Fernandez*, 54 F. Supp. 2d 195, 197 (S.D.N.Y. 1999) (emphasis added), citing *People v. Nieves*, 36 N.Y.2d 396, 404 (1975) (upholding this provision, against the claim that it was facially unconstitutional, and recognizing the possibility of a valid "any-person-present" warrant).

Indeed, the *Nieves* Court held that "[t]he circumstances under which a warrant may issue for the search of all occupants of a particular place are severely limited: the facts before the issuing Judge at the

The Court assumes, for the sake of argument, that the search warrant could be properly viewed as an "any-person-present" warrant under the circumstances, meaning that any person "present" at the time of the search could be assumed to be in possession of contraband, *i.e.*, crack cocaine, as identified in the warrant. However, even if Defendant could be searched as a person "present" in the area authorized by the search warrant at the time it was executed, it is apparent that the seizure of items from Defendant was not authorized by the warrant.

No crack cocaine was found on Defendant, or any controlled substances for that matter. Indeed, crack cocaine was found in a vacant garage across the street from 67 Townsend, after Defendant was placed in handcuffs. There was no testimony or evidence presented to connect Defendant to the crack cocaine in any fashion.

Moreover, the items seized from Defendant were his wallet containing his identification, his cell phone, an "unknown amount of money" (later determined to be $1,400), and keys. It has not been argued, and the Court cannot make a reasonable inference from the hearing evidence, how these items assisted law enforcement in identifying an individual who had "custody and control over the premises . . . searched or the items seized". Dkt. No. 463-2 (Gov't Ex. 2), p. 2

"[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items . . ." *United States v. Matias*, 836 F.2d 744,

---

time of the warrant application, and reasonable inferences from those facts, must establish probable cause to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the articles sought." *Nieves*, 36 N.Y.2d at 404. A more recent New York Court of Appeals decision reiterates that warrants of this nature "are not categorically unconstitutional", further stating, "Indeed, we think it clear that surveillance of a location may yield a factual basis to infer with the requisite force that the place is devoted to an ongoing illicit purpose, such as the manufacture or marketing of narcotics (a 'drug factory') or their use (a 'shooting gallery' or 'drug house'), and that all those present at the time of the contemplated search will probably be in possession of contraband or other specified evidence of illegality." *People v. Mothersell*, 14 N.Y.3d 358, 365-366 (N.Y. 2010).

747 (2d Cir. 1988). Simply stated, the seizure of Defendant's personal belongings exceeded the scope of the search warrant. *See, e.g., United States v. Abdellatif*, 758 F. Supp. 2d 183, 189 (W.D.N.Y. Oct. 20, 2010), *adopted by* 758 F. Supp. 2d 13 (W.D.N.Y. Dec. 16, 2010). The Government's assertion that the search and seizures were properly conducted pursuant to the warrant is wholly without merit.

D. <u>Whether there are any other Fourth Amendment grounds for the search and seizure of Defendant, and particularly the seizure of Defendant's personal items</u>

Again, while there was a search warrant here, the seizure of items from Defendant was not authorized by the warrant. The Government poses some alternative reasoning for the search and seizure of Defendant, and the seizure of the items from his person. *See, e.g., Abdellatif*, 758 F. Supp. 2d at 189 ("Since the seizure of the computer was not authorized by the warrant, the government bears the burden of proving the legality of that seizure . . . The government has offered no justification for the seizure of the computer, nor has it argued that the seizure does not warrant suppression. Therefore, I recommend that any evidence derived from the seizure of the computer be suppressed."). The burden on the Government is akin to its burden on a warrantless search or seizure. *See Hart v. Myers*, 183 F. Supp. 2d 512, 519 (D. Conn. 2002) ("[B]ecause warrantless searches are presumptively unreasonable . . . , it is the government's burden to show that a warrantless search, seizure or arrest fits within one of the narrowly tailored exceptions to the warrant requirement of the Fourth Amendment."). The Court concludes that the Government's reasoning for the seizure of Defendant's personal items does not meet its burden.

The Government argues that because Defendant was within the "immediate vicinity" of the property that was the subject of the search warrant, detaining him was proper, the officers could conduct a limited search of him as a self-protective measure, and they could also seize Defendant's personal belongings.

The Supreme Court in *Michigan v. Summers*, 452 U.S. 692 (1981), stated that " . . . for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it *the limited authority to detain the occupants of the premises while a proper search is conducted*." *Id.* at 705 (emphasis added). The Supreme Court later explained, "[i]n *Summers*, the Court defined an important category of cases in which detention is allowed without probable cause to arrest for a crime . . . The rule in *Summers* extends further than some earlier exceptions because it does not require law enforcement to have particular suspicion that an individual is involved in criminal activity or poses a specific danger to the officers." *Bailey v. United States*, 568 U.S. 186, 193 (2013).

The *Bailey* Court held that "[t]he categorical authority to detain incident to the execution of a search warrant must be limited to the *immediate vicinity* of the premises to be searched." *Id.* at 199 (emphasis added). "In determining whether an occupant was lawfully detained within such 'immediate vicinity' of the premises to be searched, courts may consider '[1] the lawful limits of the premises, [2] whether the occupant was within the line of sight of his dwelling, [3] the ease of reentry from the occupant's location, and [4] other relevant factors.'" *Cabral v. City of New York*, 2014 U.S. Dist. LEXIS 131342, *10-11 (S.D.N.Y. Sept. 17, 2014), quoting *Bailey*, 568 U.S. at 201.

Defendant concedes that if he was on the lawn of 67 Townsend when the police began their search, he was in the "immediate vicinity" of the premises, but argues that if he was in the vacant lot next door the *Bailey* factors would need to be assessed and there was not enough information at the hearing to establish those factors.

It is a close call whether Defendant was in the "immediate vicinity" of 67 Townsend, based on the suppression hearing evidence.

From the testimony, the Court could reasonably infer that Defendant was "within the line of sight" of 67 Townsend as he was within feet of the building. However, the application of the other *Bailey* factors is less straightforward. It is unclear whether Defendant could have easily entered or reentered 67 Townsend from his location. There appears to be a door on the right-hand side of 67 Townsend, directly off the concrete driveway/ walkway. *See* Dkt. No. 463-4, p. 3 (photograph). But there was no testimony about the door or where the door led (to the lower front apartment or otherwise), or whether the door was locked or unlocked. Also absent from the record is any evidence concerning the delineation of 67 Townsend's property and the property of the vacant lot. Furthermore, the testimony was confusing about the location of Defendant when he was initially observed running by Officer Patterson.

While the concrete driveway/ walkway was "immediate" as it was within feet of 67 Townsend, the Court notes that the "immediate vicinity" case law cited by the Government generally all involved individuals who were seen exiting the building at issue, were encountered inside the residence, or had some connection to the building such as ownership. *See* Dkt. No. 549, pp. 11-14 and n.1, 2.

In any event, even if Defendant's initial detention was justified because he was within "immediate vicinity" of the lower apartment of 67 Townsend, and thus a limited search of his person for the purposes of officer safety would have been proper, the Court concludes that the Government has failed to demonstrate that the continued arrest of his person and seizure of his belongings was justified. As explained by the Second Circuit:

> Absent special circumstances, the police of course have the authority to detain occupants of premises while an authorized search is in progress, regardless of individualized suspicion . . . They also have the authority to make a limited search of an individual on those premises as a self-protective measure . . . Beyond this general authority to detain persons and make limited security searches, however, there must be probable cause, or at least some degree of particularized suspicion, to justify further searches or seizures of individuals who are neither named in the warrant nor arrested as a consequence of the search . . .

*Rivera v. United States*, 928 F.2d 592, 606 (2d Cir. 1991) (internal citations omitted).

After the first day of oral argument on the Government's objections, the Court required supplemental briefing from the parties on this point, citing *Rivera*. *See* Dkt. No. 546. The Government's response focuses on the length of Defendant's "detention", *i.e.*, 30 minutes to 1 hour, as reasonable, and it argues that officers may both detain and handcuff occupants/ individuals at a search warrant location while a search is underway. But the Government does not address the items that were seized from Defendant and why the keys, cash, phone, and wallet were subject to seizure.

In the vein of *Rivera*, Defendant argues that even if his detention was reasonable to ensure officer safety, the search of his person and seizure of items from him were beyond the scope of the warrant and otherwise without probable cause. He reasons

that "[n]othing illegal was found" on his person and "there is no evidence that [he] was a continuing threat to officer safety after the conclusion of the search".  Dkt. No. 550, pp. 8-9.  The Court generally agrees.

In the alternative, the Government argues that the officers had probable cause to believe a crime was being committed in their presence, to make an immediate arrest of Defendant without a warrant, and to conduct a search incident to that arrest.

The test for probable cause is based on "the totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230-231 (1983).  The question is whether all the available facts "viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013).  It is the Government's burden to establish probable cause.  *See United States v. Elgisser*, 334 F.2d 103, 110 (2d Cir. 1964).

The laundry list of factors the Government expounds as constituting probable cause includes: (1) Defendant matching the description of the individual listed in the search warrant, and his presence at a search warrant location, *i.e.*, being "any person threat" 67 Townsend; (2) Defendant's flight upon seeing police officers arrive on the scene; (3) Defendant's criminal history of similar offenses, which the Government argues can be judicially noticed in his pretrial services report; (4) Defendant's presence at a "high-crime drug house" and in a "high-crime neighborhood"; (5) Defendant's "close proximity" to marijuana found underneath a tent; and (6) seizure of cocaine base from a "stash" location across the street.

The record of the suppression hearing does not support the conclusions made by the Government.

Probable cause to arrest "exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the believe that (1) an offense has been or is being committed (2) *by the person to be arrested*." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983) (emphasis added). The controlled substances recovered by law enforcement were not linked in any way to Defendant by the evidence presented at the hearing. Defendant was only in "close proximity" to the marijuana (which at that point was under the tent) when he laid himself down on the ground. It is undisputed that the marijuana was recovered after Defendant was handcuffed by the officers. The cocaine base was in a vacant garage across the street from 67 Townsend and was also recovered after Defendant was placed in handcuffs.

Even if the officers had probable cause to arrest Defendant for the marijuana and could therefore search him incident to the arrest, justification to search is not justification to seize. No connection was made between the items and the marijuana during the suppression hearing such that probable cause to seize them may have emerged, either before or after they were initially seized.

The Court concludes that the Government failed to establish any grounds for seizing Defendant's personal items, and therefore they are suppressed.

## II. Physical evidence seized from Defendant's vehicle on August 31, 2018

A brown book (an alleged "drug ledger")[3] was seized from Defendant's Chevy Impala vehicle following his arrest on August 31, 2018. His vehicle was parked across

---

[3] The brown book contained "a bunch of numbers", and the Government argued at Defendant's detention hearing that it is a drug ledger. *See* Dkt. No. 217, pp. 1-4. The Government affirmed its position that the book is a drug ledger during oral argument on its objections.

the street from 67 Townsend and a house or two down the street from that address.  As noted by the Magistrate Judge, the New York State search warrant specifically states "NONE" in the category of vehicles to be searched pursuant to the warrant; thus, the search of the vehicle was warrantless.  Dkt. No. 502, pp. 8-9 and n.4; *see* Dkt. No. 463-2 (Gov't Ex. 2), p. 2.

A warrantless search or seizure without probable cause does not violate the Fourth Amendment if "the authorities have obtained the voluntary consent of a person authorized to grant such consent."  *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1995).  The prosecution must demonstrate by a preponderance of the evidence that consent was voluntarily given.  *See United States v. Isiofia*, 370 F.3d 226, 230 (2d Cir. 2004).  "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."  *United States v. Sanchez*, 635 F.2d 47, 58 (2d Cir. 1980).  " '[C]onsent must be a product of that individual's free and unconstrained choice, . . . rather than a mere acquiescence in a show of authority.' " *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018).

The Magistrate Judge found that Defendant's consent to search his vehicle was involuntary on the basis of two stated factors:  (1) Defendant had been in custody for at least 30 minutes when gave the alleged consent,[4] and (2) Defendant merely acquiesced to a show of authority because of the circumstances.  Judge McCarthy made an adverse credibility finding against Detective Krug, who testified about his exchange with

---

[4] The Magistrate Judge noted that while the fact that a defendant is in custody does not, by itself, render consent involuntary, *see, e.g. United States v. Arango-Correa*, 851 F.2d 54, 57 (2d Cir. 1988), consent under such circumstances "does require more careful scrutiny", *United States v. Wiener*, 534 F.2d 15, 17 (2d Cir. 1976).  *See* Dkt. No. 502, p. 9.

Defendant, finding that Detective Krug did say "We're gonna search your vehicle" to Defendant, even though he attempted to retract that testimony.

In other words, Detective Krug did not ask Defendant permission to search the vehicle and instead *told* Defendant that law enforcement was going to search the vehicle. Thus, Defendant's response, described by Detective Krug as Defendant "impl[ying] to [Detective Krug] that he didn't have a problem with that", was a "mere acquiescence" to Detective Krug's show of authority. A judge's decision on the voluntariness issue often amounts to a credibility determination, such as the one made here. *See, e.g., United States v. Hernandez*, 5 F.3d 628, 633 (2d Cir. 1993).

The Government's primary objection is that Judge McCarthy failed to address the totality of the circumstances leading to Defendant's consent. The Government asks that the Court find Defendant's consent was voluntarily given, and in the alternative, that the Court "recall Detective King to undergo further questioning regarding the defendant's voluntary consent."

At the June 2, 2021 continuation of oral argument, the parties both agreed that the Court is bound by Judge McCarthy's credibility findings unless if the Court reopens the suppression hearing. "As a general matter, this Court defers to a magistrate judge's credibility findings in a criminal suppression context." *United States v. Quintana*, 12-CR-214S, 2018 WL 718565, 2018 U.S. Dist. LEXIS 19420, *3 (W.D.N.Y. Feb. 6, 2018), citing *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008). The Court sees no reason to disturb these findings or reopen the hearing, as the Government did not meet its burden to establish that Defendant's consent was voluntary. As such, the alleged drug ledger is

hereby suppressed as fruit of the poisonous tree.  *See generally Wong Sun v. United States*, 371 U.S. 471 (1963).

### III.    Physical evidence seized from Defendant's person on November 26, 2018

There was no search warrant with respect to the November 26, 2018 incident. Rather, money (approximately $4,000 in U.S. currency) and keys (it is unclear what they opened) were seized from Defendant's person in the area of 67 Townsend following surveillance of hand-to-hand transactions of marijuana by co-defendant Vernon James.

A. <u>Factual Background</u>

Officer Vincent Humphrey testified that there had been complaints from citizens about 67 Townsend.  The complaints led to law enforcement patrolling "in the area." Officer Humphrey then testified that the complaints concerned "a lot of black males and a lot of drug activity", but it is unclear if the complaints as to drug activity were specifically lodged about 67 Townsend or just that neighborhood.  He stated that he had been familiar with the "area" before November 26, 2018 and that he had observed drug activity, namely, "a lot of hand-to-hand transactions" occurring "from that area" and that he had previously made arrests in "the area of 67 Townsend Street".  Officer Humphrey agreed that he was familiar with the term "open air drug market" and that "this [was] an open air drug market".  However, he did not explain what that term means.

After conducting two traffic stops a couple of blocks from 67 Townsend, where the drivers told him they had purchased marijuana at that location from an individual whose description later matched that of co-defendant James, Officer Humphrey drove to 67 Townsend and saw Defendant and James standing in front of the house.  Neither of them was on the porch.  Officer Humphrey smelled a strong odor of marijuana and

searched the area, finding some marijuana that was approximately two feet from where Defendant and James were standing.  James was charged with unlawful possession of marijuana, and Defendant was charged only with criminal nuisance.  When asked where the marijuana was recovered, Officer Humphrey testified, "I don't remember.  I just know it was around the front porch area."  He explained that "[a] little over $4,000" in cash was found on Defendant, as well as "a key".

B. <u>Analysis</u>

The Magistrate Judge held that (1) the police lacked probable cause to believe Defendant was engaged in criminal activity, and therefore lacked justification for arresting or searching him; and (2) even if Defendant had been properly arrested (which is not his conclusion), the Government offered no justification for the seizure of the items following the search incident to his arrest.

The Court concludes that the Government failed to meet its burden of showing probable cause for Defendant's arrest and that the search incident to an arrest exception to the warrant requirement applied here.  Rather, as Defendant argues, this was a situation of "mere presence" as Defendant was standing next to James when Officer Humphrey approached them.  In addition, the Government offered no reasoning for the seizure of U.S. currency and keys from Defendant's person on that date.

The Government argues that there was probable cause to arrest Defendant for unlawful possession of marijuana and/or criminal nuisance, and/or a variety of other statutes, *see* Dkt. No. 549, pp. 21-23, based on the totality of the circumstances, *e.g.*, Defendant's presence at a narcotics "stash" location, his alleged proximity to James during the two marijuana sales, and his close proximity to marijuana seized on the

porch.  Thus, the Government reasons, the search incident to an arrest exception to the warrant requirement applied.  The Court has reviewed the elements of these potential charges and finds that none of them are applicable.

For example, Defendant was charged with New York Penal Law § 240.45(2) (criminal nuisance in the second degree), *see* Dkt. No. 463-5 (Gov't Ex. 5), p. 1, which requires a defendant to "knowingly conduct[] or maintain[ ] any premises, place or resort where persons gather for purposes of engaging in unlawful conduct."  There is no evidence that Defendant maintained 67 Townsend for the "purposes of engaging in unlawful conduct", however.  At the hearing, Officer Humphrey testified that there was a key on Defendant, which was recovered.  However, there was no testimony that it accessed the residence or that Defendant "maintained" that residence for illicit purposes.  To be sure, Officer Humphrey testified before the grand jury that he asked Defendant about "a set of keys" on him and Defendant "stated the keys were to 67 Townsend at the time."[5]  Dkt. No. 463-6 (Gov't Ex. 6), pp. 8-9.  But Officer Humphrey did not say whether he confirmed that they keys accessed 67 Townsend.

The record is even more confusing when one looks to the Buffalo Police Report from this date, where "2 KEYS" are listed as having been recovered and in the narrative from that date it is stated:  "DEF Sanders, John did sit on the porch of 67 Townsend st w/ CO-DEF James, Vernon who was exchanging marijuana for cash and was in possession of a set of house keys to said address maintaining control of the property of 67 Townsend (known drug house)."  Dkt. No. 463-5 (Gov't Ex. 5).  From this narrative, it

---

[5] During oral argument, Defendant asserted he does not concede that these keys opened 67 Townsend.

is unclear whether Defendant *or James* possessed the key or keys to 67 Townsend. The suppression hearing evidence does not show clarify this point, either.

As to the "stash" location argument, Officer Humphrey only testified that there had been complaints from citizens about drug activity and he had previously observed "a lot of hand-to-hand [drug] transactions" in "the area".  He agreed that he had made arrests "*in the area of* 67 Townsend Street" before November 26, 2018.  Dkt. 466, pp. 56-58 (emphasis added).

The Government's other assertion, that Defendant was proximate to James during the marijuana transactions, rests on the collective/ imputed knowledge doctrine. "The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.'"  *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003), quoting *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983).

Officer Humphrey testified at the hearing that he was working with an individual named Officer Rutherford on November 26, 2018, and he received information from Officer Rutherford that the second individual he conducted a traffic stop on had "bought drugs from 67 Townsend."  Dkt. No. 466, pp. 58, 60-61.  This is the only testimony from the hearing that mentions Officer Rutherford.

The Government argues that Officer Humphrey received information that Defendant had been next to James during the two marijuana transactions from Officer Rutherford, which prompted Officer Humphrey to approach 67 Townsend Street.  The record does not reflect this, though.

The following exchange occurred with Officer Humphrey during the hearing, on redirect: "Q. There was discussion that John Sanders was arrested for nuisance. *And to your knowledge, when Vernon James conducted these marijuana transactions, was John Sanders present? A. (Inaudible)*. . . . Recross: Q. Well, you weren't present— you didn't see any of these marijuana-- . . . You didn't see any of these marijuana transactions yourself, correct? A. No." (emphasis added). Dkt. No. 466, pp. 65-66. Counsel for the Government argues that he recollects Officer Humphrey answering "Yes" in place of the answer labeled "Inaudible" in the transcript, and that the re-cross examination supports this recollection. Dkt. No. 517, p. 6 n.3. But the Government did not move to the Magistrate Judge to correct or supplement the record from the suppression hearing, and it did not do so.

The Court concludes that the collective knowledge doctrine therefore does not apply in the way the Government argues it does, as it is unclear from the record whether Officer Rutherford had observed Defendant next to James when the hand-to-hand transactions took place.

Finally, the Government's argument regarding Defendant's proximity to marijuana seized on the porch falls flat as well. Neither Defendant nor James was on the porch when Officer Humphrey approached 67 Townsend; they were standing somewhere in front of the porch. Officer Humphrey testified that he smelled a strong odor of marijuana and searched the area, finding some marijuana that was "[p]robably like 2 feet" from where Defendant and James were standing. Dkt. No. 466, p. 61-63. When asked where the marijuana was recovered, however, Officer Humphrey testified, "I don't remember. I just know it was around the front porch area." Dkt. No. 466, p. 62.

Indeed, Officer Humphrey was only slightly more specific in his testimony before the grand jury, in that he located the marijuana in a "shopping bag". Dkt. No. 463-6 (Gov't Ex. 6), pp. 7-8. In sum, there was no testimony that the marijuana was in plain view or to indicate that Defendant even shared dominion and control over the marijuana.

The Court determines that the Government did not establish probable cause for the search and seizure of Defendant or that he could be searched incident to an arrest.

Moreover, like the preceding analysis concerning the lack of sufficient justification to seize the items recovered from Defendant on August 31, 2018, the same was lacking on November 26, 2018 as well. Authority to search is not equivalent to authority to seize. "A warrantless seizure is '*per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions.'" *United States v. Carneglia*, 603 F. Supp. 2d 488, 492 (E.D.N.Y. 2009), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967*); see United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015) ("To be valid, . . . [a] warrantless seizure must meet one of the recognized exceptions to the fourth amendment's warrant requirement."). The Government's presentation during the suppression hearing elicited entirely insufficient proof of law enforcement's authority to seize.

As such, the U.S. currency and keys seized from Defendant on November 26, 2018 are suppressed.

## **CONCLUSION**

The Court has considered the Government's remaining objections and arguments and finds them to be without merit.

The Government states that it does not object to the suppression of Defendant's statements to law enforcement on August 31, 2018 that were made without him being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The R&R recommended that those statements be suppressed on that basis, and the Court finds no clear error in suppressing those statements.

Accordingly, the Court ADOPTS Judge McCarthy's R&R, Dkt. No. 502, and Defendant's suppression motions, Dkt. No. 99, pp. 6-7, are GRANTED, and the Government's objections, Dkt. No. 517, are OVERRULED and its request to reopen the suppression hearing for a limited purpose is DENIED.

The parties shall appear for a status conference on July 9, 2021 at 12:00 p.m.

**SO ORDERED.**

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: July 8, 2021